UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

KIM GENTRY, KIM GENTRY
DRESSAGE LLC,

        Case No.: 5:25-cv-00050-RBD-PRL

        **Plaintiffs,**

     v.

MELISSA PRELL, DVM; WILLIAM B.
RUSSELL, DVM; AND PETERSON &
SMITH EQUINE HOSPITAL, LLC,

        **Defendants,**

_____/

**ORDER**

Upon referral, this diversity action alleging professional negligence, breach of contract, and related claims arising from unsuccessful equine fertility procedures is before the Court for consideration of Defendants' motion to strike Dr. Brinsko's errata sheet. (Doc. 50). Plaintiffs have responded in opposition to the motion. (Doc. 55). For the reasons explained below, the motion is due to be denied.

## I.   BACKGROUND

This action arises out of the contamination of harvested equine oocytes from Plaintiff's "irreplaceable" Oldenburg mare, a prestigious breed of horse from Germany. (Doc. 1, ¶ 19). As alleged in the complaint, Plaintiff Kim Gentry ("Gentry") is a successful International Grand Prix dressage rider and trainer who purchased the Oldenberg mare, "Dantique," in August 2023 for training and competition. (Doc. 1, ¶ 15, 17). Dantique was imported to the United States on about August 29, 2023. (Doc. 1, ¶ 18).

In late March or early April 2024,[1] just before an important international dressage qualifying event, Dantique was euthanized due to heart failure. (Doc. 1, ¶ 22). Prior to euthanasia, Dantique's ovaries were removed and couriered to Defendant Peterson & Smith Equine Hospital's Advanced Fertility Center to harvest and mature the oocytes, to perform a process known as Intracytoplasmic Sperm Injection ("ICSI"), and to provide a recipient mare for insemination with a future embryo. (Doc. 1, ¶¶ 23-25). Defendants harvested and processed twenty oocytes. (Doc. 1, ¶ 26). Soon thereafter, Defendants notified Ms. Gentry that all twenty oocytes were found to be contaminated during the processing and, therefore, were non-viable and unusable. (Doc. 1, ¶ 27).

On January 23, 2025, Plaintiffs initiated this action alleging claims for professional negligence, respondeat superior, vicarious liability, and breach of contract. (Doc. 1). In the instant motion, Defendants move to strike the errata sheet for the deposition transcript of Plaintiffs' expert, Steven Brinsko, DVM, MS, PhD, DACT, CVA.

## II.    LEGAL STANDARD

Rule 30(e)(1) of the Federal Rules of Civil Procedure permits a deponent to review the transcript and, "if there are changes in form or substance," to sign a statement listing the changes and the reasons for making them. Fed. R. Civ. P. 30(e)(1).

Many district courts in the Eleventh Circuit have adopted a broad reading of the rule. *See Cultivos Yadran S.A. v. Rodriguez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009); *and United*

---

[1] The complaint alleges that Dantique was euthanized on March 26, 2024 (Doc. 1, ¶ 22), but Defendants assert that the mare was euthanized on April 2, 2024. The precise date is not critical to the Court's analysis. More important to the Court's inquiry is the sequence of events that followed.

*Subcontractors, Inc. v. Darsey*, No. 13-cv-603, 2013 WL 5770559, at *2 (M.D. Fla. Oct. 24, 2013). On the other hand, the Eleventh Circuit has also affirmed a district court that applied the stricter test but did not explicitly endorse it. *See Reynolds v. IBM*, 125 F. App'x 982 (11th Cir. 2004).

## III.   DISCUSSION

The deposition of Dr. Steven Brinsko was taken on January 8, 2026. Defendants assert that Dr. Brinsko generally testified consistent with his expert report. At the close of the deposition, Plaintiffs' counsel confirmed that Dr. Brinsko would read the transcript and prepare an errata sheet. Dr. Brinsko did so and signed the errata sheet on February 19, 2026, one day after the 30-day time limit prescribed by Fed. R. Civ. P. 30(e), and Plaintiffs served it on February 20, 2026. First, Defendants contend that the errata sheet should be stricken because Plaintiffs failed to comply with the proper time limit.

In response, Plaintiffs request that the Court excuse the delay of one day. Plaintiffs assert that there was a miscalculation of the time period given the federal holiday of President's Day. Under these circumstances and given that the errata sheet was completed only one day past the deadline and served the next day, the Court finds the brief delay excusable.

Next, however, Defendants raise a more substantive concern. Defendants contend that Dr. Brinsko's errata sheet should be stricken because it contains new opinions outside the time limits, specifically outside the deadline for disclosing expert opinions. Most significantly,

Defendants argue that under the guise of "clarification of response," Dr. Brinsko's errata sheet has altered his opinions such that "he now believes that the Defendants breached the standard of care in their handling of the oocytes." (Doc. 50 at 4). Defendants argue that the "new opinions were disclosed over two and a half months after Dr. Brinsko's expert report was due, 11 days after the extended close of discovery, and just 12 days before the deadline for filing Motions for Summary Judgment and Daubert Motions." (Doc. 50 at 4).

Indeed, a review of the errata sheet reveals that Dr. Brinsko made numerous substantive changes to his testimony, including changes that alter the meaning of his deposition testimony in ways beyond simple clarification. For example:

> Now reads: …no indication that there was a breach of standard of care.
> Should read: …no indication that there was a breach of standard of care, other than the fact that contamination of the oocytes occurred. There is insufficient detail in the procedural descriptions to identify any one point or points at which aseptic laboratory standards were breached, but it had to have occurred or there would not be significant contamination.
> Reason for change: Clarification of response.

(Doc. 50-3 at 2).

> Now reads: That would be appropriate.
> Should read: That would be appropriate if the dishes were large enough to accommodate the instruments. Typically, a sterile towel or other type of sterile barrier is placed on the tabletop for the instruments.
> Reason for change: Clarification of response.

(Doc. 50-3 at 2).

> Now reads: Yes, it would.
> Should read: Yes, it would, provided that new bottles were used for each mare or procedure and that sterility was maintained each time media was

taken from the bottle. Because of the volume of fluid required, media used to flush numerous follicles typically comes from a larger multi-use bottle. <u>Reason for change</u>: Clarification of response.

(Doc. 50-3 at 2-3).

<u>Now reads:</u> Correct. As I stated earlier, else why do we have to put antibiotics in the media?
 <u>Should read</u>: Correct. As I stated earlier, else why do we have to put antibiotics in the media? However, the level of antibiotics in the media protects from low levels of bacteria, such might be present in room air. But, if there is sufficient contamination such that the inoculum overwhelms the antibiotics in the medium, then it is likely that the care taken to prevent this level of contamination was substandard.
<u>Reason for change</u>: Clarification of response.

(Doc. 50-3 at 3).

<u>Now reads</u>: Not necessarily.
<u>Should read</u>: Not necessarily. But, that would indicate to me that even if there was no gross evidence of contamination in the other cases, it still could have occurred or something else could have gone awry in their procedures, that may constitute a breach in standard laboratory protocols.
<u>Reason for change</u>: Clarification of response. Insufficient time was provided for a complete answer before next question was asked.

(Doc. 50-3 at 3).

The above examples are representative, but not a complete list of the substantive changes that Dr. Brinsko made to his errata sheet. Defendants contend that the circumstances make it clear that the changes are an attempt "to strengthen Plaintiffs' position against any forthcoming summary judgment motion and trial." Defendants also contend that they were prejudiced by Plaintiffs' submission of new expert opinions only 12 days before the deadline for motions for summary judgment and Daubert motions.

In opposition to Defendants' motion to strike the errata sheet, Plaintiffs argue that the changes are not contradictory to the original testimony and simply explain the answers given. Plaintiffs do not deny that the changes are substantive but argue that the changes are

corrective and not contradictory of the prior testimony. Plaintiffs contend that there is no need to reopen Dr. Brinsko's testimony.

Upon consideration, the undersigned finds Plaintiffs' argument largely unavailing. The examples provided above, at best, reflect Dr. Brinsko's attempt to qualify his prior answers with additional information or to provide additional conditions on his prior answers and opinions. It is neither fair nor accurate to conclude that the changes in the errata sheet are not substantive or that they do not change Dr. Brinsko's testimony. At a minimum, his errata sheet reflects material, substantive changes to his deposition testimony.

In light of Dr. Brinsko's substantive changes to his testimony, the Court then must decide the best course of action at this stage of the proceedings. Considering all the circumstances and balancing the prejudice to Defendants with the interests of having the case fully heard on the merits, the undersigned finds that a broad reading of Rule 30(e)—permitting changes to form or substance—is the best approach here. The broad reading of Rule 30(e) is the approach taken by the majority of courts that have addressed the issue. *See Lee-Bolton v. Koppers In*c., No. 1:10-CV-253-MCR-GRJ, 2015 WL 11111046, at *2 (N.D. Fla. June 15, 2015). *See also Cultivos Yadran S.A. v. Rodriquez*, 258 F.R.D. 530, 533 (S.D. Fla. 2009) (noting that the majority of courts considering the issue have adopted the broad interpretation). Allowing deposed parties to clarify testimony and correct errors "'furthers the purpose of the discovery process-to allow the parties to elicit the true facts of a case before trial.'" *Id, citing Reilly v. TXU Corp.*, 230 F.R.D. 486, 490 (N.D.Tex.2005),

Courts have followed this approach for a number of reasons. First, safeguards are available to prevent possible abuse or prejudice stemming from Rule 30(e) modifications. Original answers remain part of the record and may be read at trial and are thus subject to examination by the trier of fact. See *Unlimited Res. Inc. v. Deployed Res., LLC*, No. 3:07-CV-961-J-25MCR, 2010 WL 55613, at *3 (M.D. Fla. Jan. 5, 2010). Also, the deposition may be reopened to confront the changes. *Id.* "The party making the changes must bear the costs of the reopening of the deposition." *Id., citing Lugtig v. Thoma*s, 89 F.R.D. 639, 641 (N.D.Ill.1981).

Therefore, considering the plain text of the rule, as well as authority addressing the issue concluding that a deponent may make changes to the substance of deposition testimony, the Court concludes that the changes made in Dr. Brinsko's errata sheet are permissible under Federal Rule of Civil Procedure 30(e). The motion to strike the errata sheet is therefore due to be denied, and Defendants will be given an opportunity to reopen the deposition.

Further, under these circumstances, the Court is not persuaded by Defendants' argument that the changes to the errata sheet should be stricken because they reflect new opinions not previously disclosed before the expert disclosure deadline. Upon preliminary review, the undersigned notes that the changes to the errata sheet reflect answers elicited by counsel's questions related to Dr. Brinsko's broad, general opinion that "[i]t is most likely, that the contamination of Dantique's oocytes occurred at the Advanced Fertility Unit at Peterson and Smith Equine Hospital." (Doc. 50-1 at 1). But more significantly, while the motion to strike the errata sheet has been referred to the undersigned, the scope of permissible expert testimony and other important trial-related issues are reserved for the district judge. The undersigned's decision on the instant motion is intended to pertain only to whether the

errata sheet should be stricken, and not to broader issues such as the scope of Dr. Brinsko's permissible testimony at trial.

**IV.    CONCLUSION**

Accordingly, for the reasons explained above, it is ORDERED that:

1. Defendants' motion to strike the errata sheet for Dr. Brinsko's deposition transcript (Doc. 50) is **DENIED**.

2. If Defendants choose to do so, they may reopen the deposition of Dr. Brinsko. Plaintiffs shall bear the full cost of reopening the deposition of Dr. Brinsko.

3. If Defendants choose to reopen the deposition of Dr. Brinsko, the discovery deadline shall be deemed reopened for the limited purpose of deposing Dr. Brinsko, however, the parties should conduct the deposition no later than May 29, 2026.

4. Otherwise, all deadlines in the Case Management and Scheduling Order (Doc. 26) shall remain undisturbed.

**DONE** and **ORDERED** in Ocala, Florida on April 27, 2026.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record

Unrepresented Parties